### Application of Eugene S. PENNE-BAKER, Jr.
### Patent Appeal No. 9210.

United States Court of Customs and Patent Appeals.

May 9, 1974.

John S. Schneider, Houston, Tex., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C. for the Commissioner of Patents. Jere W. Sears, of counsel.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection for obviousness under 35 U.S.C. § 103 of claims 1–3, 7–10, and 14–18 of application serial No. 860,108, filed September 22, 1969, entitled "Method for Prediction of Abnormal Pressures from Routine or Special Seismic Records." We reverse.

### The Invention

The invention relates to a seismic method for determining the depth and pressure of highly pressurized (abnormal) formations in sedimentary layers of the earth. The abnormal formations occur as a result of fluids becoming trapped within a relatively impermeable formation such as shale. When such formations are penetrated during drilling, the high pressure can result in a "blowout" and loss of the well unless certain precautions are taken. These precautions involve the setting of casing in the borehole and use of heavier drilling muds with consequential increased costs and slowed drilling rate. By predetermining the depth and location of these formations, the use of these expensive precautions can be reduced. This invention is particularly useful in drilling for oil in unexplored areas (wildcatting).

The invention involves setting off an explosive charge on the earth's surface and detecting seismic or acoustic waves reflected by sedimentary formations with a plurality of linearly-arranged geophones. The geophones are spaced at increasing distances from the charge to measure the two-way travel times of the waves reflected back to the surface by the formations. The average velocity to each reflecting formation is computed from the travel times and plotted as a function of travel time or depth to pro-

vide a subsurface profile. This profile is compared with a "normal" profile (from nearest borehole or a mathematical estimate) that has no abnormally high pressure formations, the deviations between the profiles indicating high pressure formations. The amount of deviation is indicative of the magnitude of the pressure in an abnormal formation. Claim 1 is illustrative:

1. A method for detecting abnormally pressured earth formations comprising:

performing a seismic observation at the earth's surface in which seismic waves are generated at the earth's surface and seismic energy result-ing from said seismic waves so generated is detected at the earth's surface to obtain average seismic velocities through earth formations beneath the location of said seismic observation; and

utilizing variations between the average seismic velocities in abnormally pressured formations and average seismic velocities in normally pressured formations to determine the depth of said abnormally pressured formations.

*The Rejection*

The following references were relied on to show obviousness:

Hottman     3,235,026     Feb. 15, 1966

Green, "Velocity Determinations by Means of Reflection Profiles," Geophysics, Volume III, Number 4, October, 1938, pages 295 to 305.

---

The following quotation from appellant's specification discusses the prior art and particularly a method of detecting abnormal formations using acoustic logging as disclosed by the Hottman patent:

In areas where there is reason to suspect the existence of such high pressure formations, various techniques have been followed in attempts to locate such zones. For example, acoustic * * * logs have been run repeatedly after short intervals of borehole have been drilled, and a plot of acoustic velocity * * * as a function of depth has been made. Abnormal variations of acoustic velocity * * * obtained by logging may indicate that the drilling operation is in a zone of increasing formation pressure. It is manifest that such techniques * * * cannot predict what pressures will be encountered ahead of the bit.

The Green article discusses the feasibility of indirectly computing average subsurface velocities by means of seismic reflection profiles.

The claims were rejected as obvious in view of Green and Hottman under 35 U.S.C. § 103. In his use of these references, the examiner commented as follows:

Green discloses the well-known prior art surface velocity profiling technique in which the travel time angularity is utilized to determine the average acoustic wave velocities in the strata beneath the survey location. The data can be plotted in various forms including velocity versus depth graphs as shown in Figs. 6, 7 and 8 of Green. Hottman teaches that in the vicinity of an abnormally pressured formation, the rate of velocity increase with increasing depth decreases and an abnormally pressured formation results in a deviation of the velocity versus depth graph from its normal logarithmic characteristic. It would not be unobvious to plot a normal logarithmic velocity versus depth graph on the same chart as the observed velocity versus depth graph obtained by the Green method. Observation and measurement of the devia-

tion between the graphs gives information as to the depth and pressure of the abnormal formation.

The board adopted the examiner's analysis and conclusions and made the following comments:

Illustratively, both Figures 6 and 7 of Green and the related text reveal a technique of comparing a surface velocity profile curve with a "normal" well data curve. Both of these figures were obtained by methods disclosed therein to a degree which is commensurate with the disclosure of methodology provided in the instant case; that is, apparently in accordance with standard procedures. In both instances the surface velocity profile curves indicate situations which are also "normal" relative to the "normal" well data. Figures 2 and 3 of Hottman and the related disclosure teach comparison of "normal" and "abnormal" curves in a situation in which the "abnormal" curve resulted from well log data. However, taking these two references together, we agree that, within the statutory standard of 35 U.S.C. 103, it is obvious that the acquisition of a Green surface velocity profile in the vicinity of the area under investigation by Hottman would result in a curve having a deviation comparable to that taught by Hottman. Further, it would be obvious to compare this plot with a so-called "normal" curve in accordance with the Hottman comparison technique to determine that the deviation is indicative of pressure abnormality.

## OPINION

Appellant's method and Hottman's method both utilize the travel time of acoustical waves. However, Hottman uses an acoustic well-logging tool to directly measure velocities in shale formations immediately surrounding a borehole while appellant's seismic method uses many velocity measurements statistically averaged to obtain the gross properties of sedimentary rocks including shales to show a broad trend of abnormal pressure information. Hottman's borehole velocity data is disclosed as being indicative of abnormal pressures only in shales and is not equivalent to the surface velocity data of the gross properties of various sedimentary layers. Furthermore, there is nothing in Hottman to indicate that the relationships it establishes between borehole-determined travel time and abnormal formations would have been considered applicable to surface velocity data.

Considering the differences between appellant's invention and the prior art, we find the board erred in its holding that the invention as a whole would have been obvious. We do not find support for the examiner's conclusion, adopted by the board, that the prior art in any manner suggests plotting a "normal" profile and comparing it with a surface velocity profile such as would be obtained by the Green method. Nor do we agree that it would have been obvious that deviations in a surface velocity profile would have been recognized as indicating abnormal formations.

Appellant acknowledges that a Green surface velocity profile in the area under investigation by Hottman would manifestly result in a curve having a deviation comparable to that taught by Hottman. But absent appellant's disclosure, the record does not indicate that it would have been obvious to those skilled in the art to compare a surface velocity profile obtained by Green's method with a representative "normal" profile to detect or locate abnormal formations.

Since we find that the references relied on by the examiner fail, in the absence of appellant's disclosure, to suggest the claimed method, we find it unnecessary to consider an affidavit and certain literature references cited by appellant.

The decision of the board is reversed.

Reversed.